IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BARTO USRY,

      Plaintiff,

v.                              Civil Action No. 5:11CV141
                                          (STAMP)

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DECLINING TO ADOPT REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
GRANTING UNITED STATES' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

I.  Procedural History

The plaintiff initiated this civil action by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., alleging that the staff at FCI Gilmer, in Glenville, West Virginia, negligently failed to protect him from an attack by another inmate in the general population. Pursuant to Local Rule of Prisoner Litigation 2, the case was referred to United States Magistrate Judge James E. Seibert for report and recommendation. The plaintiff was then granted leave to proceed in forma pauperis and the Clerk was directed to issue a summons. The United States filed a motion to dismiss, wherein the United States asks this Court to dismiss this civil action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This motion also requests, in the alternative, that this Court

grant summary judgment in favor of the United States pursuant to
Fed. R. Civ. P. 56.

A <u>Roseboro</u>[1] notice was issued and the plaintiff filed a motion
to amend his complaint, which motion was granted by the magistrate
judge.  After the United States filed a supplemental memorandum in
support of its motion to dismiss based upon the amended complaint,
and the magistrate judge handled a number of other initial motions
and disclosures, Magistrate Judge Seibert issued a report and
recommendation.  In his report and recommendation, the magistrate
judge recommends that the United States' motion to dismiss be
denied.  The United States filed objections to the magistrate
judge's report and recommendation, and the plaintiff responded to
those objections both by filing a motion to strike the objections
and by filing a document entitled "Plaintiff's Reply to United
States' Objections to August 6, 2012, Report and Recommendation."[2]
The magistrate judge's report and recommendation is now ripe for
disposition by this Court.  For the reasons that follow, this Court
will decline to adopt the magistrate judge's report and
recommendation, and will grant the United States' motion to dismiss

---

[1]<u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975)
(finding that the court must inform a pro se petitioner of his
right to file material in response to a motion for summary
judgment).

[2]The plaintiff also filed a motion for an extension of time to
file his reply to the United States' objections to the report and
recommendation.  The United States did not object to this motion,
and this Court has considered the plaintiff's reply to the United
States' objections.  Accordingly, the motion for extension of time
is granted.

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## II.  Facts

In his amended complaint, the plaintiff alleges that he was previously a member of the "Dirty White Boys" prison gang ("DWBs") for a number of years, but that he disassociated himself from the DWBs at some time between 2006 and March 2007, while he was incarcerated at USP Lewisburg.  In March 2007, he avers that he finally "covered up" his DWBs tattoo by superimposing another tattoo over it -- an act which, according to the plaintiff, demonstrates permanent disassociation from the DWBs.  However, the plaintiff asserts that any member who disassociates with the DWBs after becoming a sworn member is forever marked for murder on sight by any other gang member.  As a result of the plaintiff's disassociation, the plaintiff entered into protective custody at USP Lewisburg until the time of his reassignment to USP McCreary. The plaintiff alleges that, while at USP McCreary, he suffered a near-fatal beating at the hands of the DWBs, and was transferred to the Federal Medical Center at Springfield, Missouri, until he was well enough to return to USP McCreary, where he was kept in segregation until his transfer to FCI Gilmer in August 2010.

The plaintiff states that upon his arrival at FCI Gilmer, he informed security staff that he had to be segregated from any DWBs gang members that were housed at the compound.  The security staff assured him that no DWBs were present at FCI Gilmer, and thus

placed him in general population. However, the plaintiff claims that a few months after his transfer to FCI Gilmer, while he was spending time in the Special Housing Unit ("SHU") for disciplinary reasons, a DWBs member was transferred to FCI Gilmer and placed in general population. The plaintiff further claims that he was not informed of the DWBs member's transfer to the facility, and shortly after the plaintiff was released from the SHU and returned to general population, on February 14, 2011, that DWBs member severely beat the plaintiff with a metal pipe, and caused a number of serious, permanent facial, oral and head injuries.

The plaintiff claims that, if he had known of the DWBs member's presence in general population at the time that he was released from the SHU, he would have refused to return to the compound, and would have thus avoided the attack on February 14, 2011. He also alleges that the staff of FCI Gilmer was negligent in allowing him to return to general population without ensuring that no DWBs members had arrived at the compound while the plaintiff was in the SHU. The plaintiff claims that the staff knew or should have known, based upon Federal Bureau of Prisons ("BOP") records and what the plaintiff had told them, that any DWBs gang member posed a serious safety threat to the plaintiff. He further asserts that the United States negligently breached a duty to protect him from such known and serious risks when it failed to inform him of the DWBs gang member's presence when he was released from the SHU in early 2011. He alleges that the United States'

negligent breach of its duty to protect him proximately caused his injuries which resulted from the assault. In the plaintiff's amended complaint, he also claims that the staff of FCI Gilmer was negligent in its initial screening of the DWBs inmate assailant, now identified as "Bubba," upon his arrival at the compound because they failed to adequately determine Bubba's gang affiliation status, and failed to ensure that Bubba was not housed with the plaintiff. This negligence, he asserts, also proximately caused his injuries resulting from the assault of February 14, 2011.

## III. Applicable Law

### A. Review of the report and recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the United States has filed objections in this case, this Court will undertake a de novo review.

### B. Motion to dismiss for lack of subject matter jurisdiction[3]

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

---

[3]Because this Court finds that dismissal for lack of subject matter jurisdiction is appropriate in this case, the United States' other bases for its motion to dismiss, or in the alternative, motion for summary judgment, will not be discussed.

A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Id.; Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." Adams, 697 at 1219. Further, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed. R. Civ. P. 12(h)(3).

## IV. Discussion

### A. United States' assignments of error

The FTCA waives the federal government's traditional immunity from suit for claims for money damages based on the negligence of its employees, and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." 28 U.S.C. § 1346(b)(1); Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). In classes of cases where the United States has waived its immunity, such as those under the FTCA, the jurisdiction of the federal courts to entertain a particular case is defined by the

terms of that waiver.  <u>United States v. Sherwood</u>, 312 U.S. 584, 586-87 (1941).

Under the FTCA's immunity waiver, Congress has defined certain exceptions, the application of which defines this Court's jurisdiction over FTCA claims.  The exception relevant to this case is known as the discretionary function exception, delineated in 28 U.S.C. § 2680(a).  This exception expressly provides that the immunity waiver created by the FTCA "does not apply to claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'"  <u>McMellon v. United States</u>, 387 F.3d 329, 335-36 (4th Cir. 2004) (quoting 28 U.S.C. § 2680(a)).  The discretionary function exception defines one type of negligence claim for which the United States has not waived its sovereign immunity under the FTCA, and as such, in cases where the discretionary function applies, federal courts lack jurisdiction.

The United States here argues that the discretionary function exception applies to all of the allegedly negligent behavior of the staff at FCI Gilmer asserted in the plaintiff's complaint. Accordingly, because this argument necessarily claims that this Court lacks subject matter jurisdiction over this case, this Court must consider it first in order to determine whether it has jurisdiction to consider the merits of the plaintiff's case.  <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S.

765, 778-79 (2000) (abrogated on different grounds by <u>Cook County</u> <u>v. United States ex rel. Chandler</u>, 538 U.S. 119 (2003)) ("Questions of jurisdiction, of course, should be given priority -- since if there is no jurisdiction, there is no authority to sit in judgment of anything else.").

Further, the plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show that" the discretionary function exception does not apply. <u>LeRose v.</u> <u>United States</u>, 285 F. App'x 93, 96; <u>Welch v. United States</u>, 409 F.3d 646 (4th Cir. 2005). The magistrate judge assessed the application of the discretionary function exception to the plaintiff's claims in this case, and recommends that this Court not dismiss this civil action on this basis at this time. However, the United States asserts that the magistrate judge's review of this issue was erroneous because he failed to properly assess the burden on this issue. Rather, the United States argues, the magistrate judge reviewed the application of the exception as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which places the burden of showing that dismissal is warranted on the party requesting dismissal. After review of the filings in this case, as well as the report and recommendation, this Court agrees with the United States that the magistrate judge erroneously assessed the burden as to this issue.

In response to this objection to the report and recommendation, the plaintiff argues that the United States did not

make its reliance upon Fed. R. Civ. P. 12(b)(1) in support of dismissal based upon the discretionary function exception sufficiently clear, and that the plaintiff was thus not given the proper opportunity to respond to allegations against jurisdiction in this case. He also asserts that, as a _pro se_ plaintiff, he cannot reasonably be held to the same burden as a plaintiff proceeding with counsel. However, this Court finds that it is clear from the United States' motion to dismiss and the two accompanying memoranda filed in support of that motion, that United States relies upon Fed. R. Civ. P. 12(b)(1) and challenges this Court's jurisdiction over this case. In fact, in the opening paragraph of the United States' memorandum in support of its motion to dismiss, the United States directly states that its motion to dismiss is filed "pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." ECF No. 28 Ex. 2 *1.

Further, this Court recognizes and does not discount the plaintiff's argument that he is a _pro se_ litigant, not an attorney, and thus cannot be held to the same pleading standards as a represented party. See Haines v. Kerner, 404 U.S. 519 (1972) ("The United States Supreme Court holds allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers."). As such, this Court has considered the plaintiff's pleadings with regard to his burden of proving the jurisdiction of this Court liberally, and has attempted to glean all arguments from the plaintiff's filings, regardless of the level of skill with

which any argument may have been raised. However, this less stringent standard does not shift the burden of proof away from the plaintiff. Accordingly, this Court must reevaluate the application of the discretionary function exception to the plaintiff's claims under a Fed. R. Civ. P. 12(b)(1) standard, placing the burden of proving jurisdiction on the plaintiff.

In addition to the standard utilized by the magistrate judge with regard to the application of the discretionary function exception to this case, the United States also charges that the magistrate judge misconstrued its argument for the exception as one based upon duty/breach under negligence law. The United States asserts that it has never advanced any such argument. It also asserts that the magistrate judge relied upon factual and legal arguments not raised or relevant to the discretionary function exception argument and excluded discussion of evidence relating solely to the jurisdictional issue. This Court reviews the magistrate judge's conclusions as to the application of the discretionary function exception <u>de novo</u>, and keeps these objections in mind.

B.   <u>The discretionary function exception to the FTCA</u>

In order to determine whether the discretionary function exception applies to the conduct alleged by the plaintiff, this Court must first determine whether that conduct "involves an element of judgment or choice," or whether a "federal statute, regulation, or policy specifically prescribes the course of action

for an employee to follow." <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988). If the Court finds the latter, the discretionary function exception cannot apply. If, on the other hand, the Court finds that the conduct alleged does involve a certain amount of judgment or choice, and is not directly regulated by a statute or regulation, the Court must then determine "whether that judgment is of the kind that the discretionary function is designed to shield." <u>Id.</u> Such judgments are those "decisions grounded in social, economic, and political policy." <u>Id.</u> Review of challenged conduct must focus on the objective nature of the act itself, not the "status of the actor" or the actor's subjective intent behind the conduct. <u>United States v. Varig Airlines</u>, 467 U.S. 797, 813 (1984). As such, so long as the government employee's conduct involved discretion, and the decision itself was grounded in public policy, the exception applies, even if the decision made was an abuse of discretion. <u>Palay v. United States</u>, 349 F.3d 418, 428 (7th Cir. 1995); 28 U.S.C. §2680(a).

The magistrate judge found, and no party has disputed his finding in this regard, that the challenged conduct of the staff at FCI Gilmer is the decision to place Bubba in general population while the plaintiff was in the SHU or, in the alternative, the decision to place the plaintiff back in general population after placing Bubba there. This Court agrees with the magistrate judge, and also finds this to be the challenged conduct in this case. The United States asserts that the discretionary function exception

applies to decisions of where to place inmates within BOP facilities. While the plaintiff and the magistrate judge both agree that the actual decision regarding where to place inmates is discretionary, the plaintiff argues that the process which staff must utilize in order to make that decision is mandatory. He asserts that this mandatory inmate intake screening process, as set forth in 28 C.F.R. § 522.21 and P.S. 5290.15, <u>Intake Screening</u>, as well as P.S. 5180.05, <u>Central Inmate Monitoring System</u>, was violated.[4]

Initially, as noted above, the plaintiff argues that the discretionary function exception does not apply to his placement and the placement of Bubba in general population, because that placement violated mandatory requirements contained in P.S. 5180.05. P.S. 5180.05 covers the proper handling of "inmates who present special needs for management," or central inmate monitoring ("CIM") inmates. The plaintiff argues that section d and section f of P.S. 5180.05, which both indicate classifications of inmates who qualify as CIM inmates, apply to this case. Section d lists as CIM inmates, those who "belong to or are closely affiliated with groups (e.g., prison gangs), which have a history of disrupting

_____

[4]The plaintiff also makes a vague allegation that there may be language within the CIM Operational Manual which imposes a mandatory duty to keep the plaintiff away from all DWBs. However, the plaintiff does not say what that language is, what that language may mandate, or where in the CIM Operational Manual that language may exist. As such, this allegation is deemed too vague and unsubstantiated to support his burden in this case. Accordingly, it will not be discussed.

operations and security . . . This assignment also includes those persons who may require separation from a specific disruptive group." Section f includes "[i]nmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future." The United States admits, and the same is confirmed through the plaintiff's intake screening form from FCI Gilmer, that both Bubba and the plaintiff are CIM cases inmate as a result of separatee status with regard to individual other inmates.

The plaintiff argues, however, that the DWBs should have been classified as a "disruptive group," which would have required that Bubba, as a member of a "disruptive group," be housed in a high security facility only, pursuant to P.S. 5100.08. In response to this argument, the magistrate judge includes in his report and recommendation, an extended discussion regarding whether the DWBs were, or perhaps should have been, classified as a "disruptive group" under P.S. 5180.05. However, this discussion is irrelevant to this Court's determination here. Both the plaintiff and the United States agree that the DWBs were not officially classified as a "disruptive group," but were rather considered "security threat groups" or STGs. The wisdom of this classification is not within the purview of this Court in this case. Accordingly, as it is undisputed that the DWBs are not classified as a "disruptive

group," no discussion of whether Bubba should have only been housed in a high security facility is necessary. Accordingly, this Court cannot find that any violation of P.S. 5180.05 has been shown.

As the plaintiff was admittedly a CIM case upon his transfer to FCI Gilmer, 28 C.F.R. § 522.21(a) and P.S. 5290.15 require that a review of that fact, and the ramifications of any relevant keep-away orders, be completed prior to the plaintiff's assignment to general population. The relevant portions of P.S. 5290.15, which tracks and quotes 28 C.F.R. § 522.21(a), require that institutional staff "ensure that a newly arrived inmate is cleared by the Medical Department and provided a social interview by staff before assignment to the general population." This social interview must be aimed at determining "if there are non-medical reasons for housing the inmate away from the general population," and requires that the interviewer review the SENTRY information[5] and the Inmate Central File, in order to determine whether the inmate is suitable for placement in general population. P.S. 5290.15 also directs staff to "place particular emphasis on the Central Inmate Monitoring [CIM] status," and "to ensure separatees are not housed together, staff shall access the newly received inmate's SENTRY-generated Intake Screening form and thoroughly review the CIM

---

[5]SENTRY is the BOP's "primary mission support database." <u>Select Application Controls Review of the Federal Bureau of Prisons's Sentry Database System</u>, Report No. 03-25 July 2003, Office of the Inspector General. The SENTRY system is used to collect, maintain, and report inmate information including but not limited to "inmate institution assignment, inmate population, and sentence data." <u>Id.</u>

Clearance and Separatee Data to identify any separatees currently housed in the institution." Staff making housing decisions are required to review the results of the intake screening process "to ensure restrictions are noted prior to assignment." Id.

The United States asserts that all of these required processes were completed with both the plaintiff and with Bubba upon entry into FCI Gilmer and prior to assignment into general population, and that neither inmate was listed as a CIM separatee from the other. Further, the United States asserts, while the plaintiff's intake papers indicated a recommendation that the DWBs posed a threat to the plaintiff, and that specific individuals were noted as separatees from the plaintiff, there was no mandate that the plaintiff had to be separated from all DWBs. The United States also asserts that, while it was aware the Bubba was a member of the DWBs upon his entry into FCI Gilmer, the plaintiff was not a specific separatee listed in Bubba's SENTRY file. Accordingly, the United States claims that it completed all mandatory processes, and no mandatory keep-aways relevant to Bubba or the DWBs were found. As such, the decisions regarding the placement of the plaintiff and of Bubba into the general population were discretionary, and thus fall within the discretionary function exception of the FTCA. This Court agrees.

The United States has provided copies of both Bubba and plaintiff's intake screening forms which resulted from the intake screening interviews at FCI Gilmer. It has also provided

documentation regarding the plaintiff's CIM status and separatees, and notations regarding the heightened security concerns between the plaintiff and the DWBs.  Also attached are a number of sworn declarations of FCI Gilmer staff involved in the intake of both the plaintiff and of Bubba.  All of these attachments support the United States' assertions that all necessary intake procedures were followed.  They also support the United States' assertions that no mandatory keep-aways were listed between the plaintiff and Bubba or the plaintiff and the DWBs in general, at the time that the plaintiff and Bubba were transferred to FCI Gilmer.  The plaintiff offers bare allegations that he had permanent separatee status from all DWBs as a result of "the record compiled at United States Penitentiary Lewisburg."  ECF No. 65 *10.  However, the record from USP Lewisburg provided to this Court by the United States simply indicates a recommendation that the plaintiff be transferred to an new facility due to a heightened security risk associated with the DWBs.  There is no indication of a mandatory or permanent keep-away regarding that entire group.  Accordingly, the plaintiff has offered nothing to refute the United States' arguments or the evidence used to support them.[6]  Thus, the plaintiff has failed to

---

[6]The record shows that the content of the plaintiff's intake interview is disputed.  The United States claims that the plaintiff did not adequately inform the intake staff that he could not be housed with any DWBs at any time.  The plaintiff, on the other hand, asserts that he made the same entirely clear.  As explained below, this factual dispute is irrelevant to this Court's determination regarding the United States' fulfillment of its duties under P.S. 5290.15.  That program statement section makes nothing mandatory beyond the actual interview and consideration of

carry his burden to show that his placement, or the placement of Bubba, was carried out in violation of any mandatory duty on the part of the United States. As such, the placements were discretionary in nature.

This conclusion is supported by several analogous cases in other courts. In <u>Brown v. United States</u>, 569 F. Supp. 2d 596 (W.D. Va. 2008), the Western District of Virginia, in a highly factually similar case,[7] found that the discretionary function applied to "a prison official's decision regarding whether to place an inmate in the general population." <u>Id.</u> at 600. That Court found that, "[w]hile BOP regulations require prison officials to interview an inmate immediately upon his arrival, . . . the regulations do not mandate a non-discretionary course of conduct, but instead leave ample room for judgment." <u>Id.</u>

Also analogous to this Court's conclusion that the discretionary function exception applies in this case is <u>Cohen v. United States</u>, 151 F.3d 1338 (11th Cir. 1998). In that case, the Eleventh Circuit found that so long as BOP personnel followed guidelines in classifying inmates and placing them in certain

---

certain information. Accordingly, how the intake staff uses the information it learns through the intake process is a matter of discretion.

[7]This Court notes that the magistrate judge distinguished <u>Brown</u> from this case because the danger to the plaintiff in this case was foreseeable, which he did not believe to be the case in <u>Brown</u>. For the reasons discussed below, this Court finds this to be a distinction without a difference with regard to the application of the discretionary function exception.

institutions, the ultimate decision regarding an inmate's placement was discretionary. The Court supported this conclusion by reasoning that the relevant statutory provisions "do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners . . . . Instead, they give the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider and leaving the BOP what weight to assign to any particular factor." Id. at 1343. The same is true here. P.S. 5180.15, as well as 28 C.F.R. § 522.21, mandate that certain processes and considerations be taken in placing an inmate upon intake. However, the final decision regarding where to place the inmate as a result of that process and information gathering is one of discretion for the staff.

This Court also finds that decisions regarding the placement of inmates are grounded in public policy. These decisions are unquestionably grounded in social, economic, safety and security concerns, the very type of issues intended by 28 U.S.C. § 2680 to be left unregulated by tort law. See Brown, 569 F. Supp. 2d at 600 ("28 C.F.R. § 522.21 implicitly confers discretion on prison officials in deciding whether to place an inmate in the general population, it is presumed that such a decision is grounded in policy."). Additionally, this Court notes that the plaintiff has offered no evidence or even argument as to this element, and has thus failed to satisfy his burden at this stage as well. As such, this Court finds that the discretionary function exception applies

to the charged conduct on the part of the United States in this case.

Much of the plaintiff's position in opposition to this conclusion centers around the wisdom of the decision to place both the plaintiff and Bubba in general population, given the knowledge that the plaintiff had defected from the DWBs and had been attacked by their membership in the past. Both the plaintiff and the magistrate judge endeavor to provide detailed explanations of the well-established violent nature of the DWBs and of the United States' knowledge of the same. They also note that the plaintiff told the FCI Gilmer staff upon his intake interview that he could not be housed with any DWBs members, and that he was assured that none were present on the compound. Essentially, the central argument against the application of the discretionary function exception advanced by the plaintiff is that an attack against the plaintiff should he be housed in general population with any DWBs member was foreseeable to the United States, and thus the intake process was completed negligently.

In this regard, the magistrate judge concluded that "[i]t can hardly be said that 18 U.S.C. § 4042's policy goal of protecting federal prisoners' health, safety, and security and ensuring the orderly running of the institution was achieved by the BOP's decision to place both plaintiff and "Bubba" together in the FCI Gilmer general population." ECF No. 67 *30. This Court believes that this reasoning and conclusion misconstrue the standard for

determining whether the discretionary function exception applies in this case.

As this Court has previously noted, the determination of the application of the discretionary function exception is not akin to a negligence inquiry. The wisdom or reasonableness of the actual ultimate decision challenged is irrelevant to the determination. Rather, if a decision is a discretionary one, and no mandatory duties were breached, "whether the government was in fact negligent is irrelevant to the analysis." <u>Hylin v. United States</u>, 755 F.2d 551, 553 (7th Cir. 1985). Further, the magistrate judge's conclusion that, because the decision to place both the plaintiff and Bubba in general population may have been ill-advised, the decision cannot be one of public policy, also fails to apply the actual analysis necessary. In order to determine whether a decision is one grounded in public policy such that it is one that the discretionary function exception was designed to protect, courts must observe the nature of the decision objectively, and whether the nature of the decision is "grounded in social, economic, and political policy." <u>Berkovitz</u>, 486 U.S. at 536. Whether the actual decision made advanced any particular articulated policy goal is irrelevant so long as the nature of the decision is grounded in public policy generally.

Finally, to the extent that the plaintiff brings an FTCA claim regarding the assault that he suffered at USP McCreary, for the same reasons articulated above, this Court finds that this claim

should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). There is no allegation or argument presented by the plaintiff that the intake process at USP McCreary failed the mandates of P.S. 5290.18 or any other statute or regulation. Thus, the plaintiff's placement in general population at that institution was also a discretionary decision.

Accordingly, this Court finds that it lacks subject matter jurisdiction to examine the merits of any of the plaintiff's claims in this case. The United States' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted, and the plaintiff's civil action is thus dismissed in its entirety for lack of subject matter jurisdiction.

## V. <u>Conclusion</u>

For the reasons set forth above, after a <u>de novo</u> review, this Court DECLINES to adopt and affirm the report and recommendation of the magistrate judge. Accordingly, the United States' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 27) is GRANTED. The United States' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the United States' motion for summary judgment, are DENIED AS MOOT. The plaintiff's motion to strike and/or dismiss the United States' objections to the report and recommendation (ECF No. 71) is DENIED. The plaintiff's motion for extension of time to submit a reply to the United States' objections (ECF No. 70) is GRANTED. The plaintiff's complaint is

DISMISSED WITH PREJUDICE. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 25, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE